Matter of the Estate of HERMAN A. FLURSCHEIM, Deceased.

(Surrogate's Court, New York County, June, 1919.)

Transfer tax — value of decedent's interest in a partnership including the good will — rules for determination.

> The interest of decedent who, at the time of his death, was an equal partner with another in a business which had been established eleven years, should, for the purposes of a transfer tax, be determined as follows, viz:   From the average net profits for the three complete fiscal years next preceding the death of decedent should be deducted six per cent interest on the average net capital employed for the same period and also the amount of salaries of the two partners; the difference, multiplied by five, is the value of the good will, and one-half thereof added to the amount of decedent's capital account as shown by the books of the firm is the value of his interest in the partnership at the time of his death.

APPEAL by the state comptroller from an order assessing the transfer tax.

Lafayette B. Gleason (Schuyler C. Carlton, of counsel), for state comptroller.

Strauss, Reich & Boyer, for executors.

FOWLER, S. This appeal is taken by the state comptroller from the report of the transfer tax appraiser and the order assessing the tax on the ground that the interest of decedent as a copartner in the firm of Franklin Simon & Co. has been undervalued and that the amount allowed as a deduction from the gross estate as counsel fee is excessive.

The decedent, who died August 18, 1914, and Franklin Simon were equal partners in the business, which was established in the year 1903 with a combined capital of $110,000. At the date of death of decedent the net worth of the copartnership as shown by the books was $1,477,519.31. The transfer tax appraiser has valued the interest of decedent in the firm at $904,241.09, of which $613,051.11 represents the decedent's capital and $291,289.98 decedent's one-half interest in the good will. The appraiser has adopted as his estimate the valuation fixed by a certified public accountant, retained by the estate, which report is part of the record.

The date fixed by the firm as the termination of the fiscal year was the first day of February. The books of the partnership as of August 1, 1914, show the assets of the concern to be of the value of $1,755,757.82 and the decedent's capital account to be the sum of $664,819.45. The accountant has not accepted the statement of the assets as shown by the books of the concern, but has applied to certain items depreciations which reduce the decedent's interest in the capital to the amount found by the appraiser as its value. The accounts receivable are set down in the books at the sum of $657,817.27. The accountant has depreciated this item in the sum of $43,986.68, which includes $5,000 for bad or doubtful accounts, $6,497.78 for carrying fifty per cent of the accounts for a period of four months and $32,488.90, which represents ten per cent

Surrogate's Court, New York County, June, 1919.    [Vol. 107.

of the cost of collection for merchandise which was not paid for on delivery. There is no justification in the record for a depreciation in the accounts receivable to such an extent. The analysis submitted by the expert accountant shows that of the amount of $649,778.02 outstanding on August 1, 1914, the sum of $632,598.73 or all but $17,179.29 was collected within three months thereafter. The accountant's report does not show how much, if any, of the accounts receivable were uncollected four months after the death of the decedent. A depreciation of $10,000 from the book value of this item would be ample to cover all contingencies.

The inventory value of the merchandise is shown by the books to be the sum of $595,500. This is arrived at by deducting twenty-five per cent from the sales price.

Whatever objections there may be to this method of ascertaining the value, it is stated by the accountant to be the plan adopted by other concerns dealing, as this firm does, in a great variety of articles, and perhaps it is as fair as any. The accountant, however, has reduced the inventory value as thus determined by ten per cent or the sum of $59,550, because he has found that certain articles were sold by the concern at less than what is called the usual selling price on which the calculation of the inventory value is based. The book value of the merchandise should prevail. The system by which it was determined is founded on the experience of the firm and its accuracy is not brought into question by the instances cited by the accountant.

Three elements must be considered in the determination of good will—net profits, capital and the number of years purchase. In the present case the appraiser has subtracted from the net profits for each year taken the difference between the price actually paid by

the copartnership for the merchandise and its cost in case the firm had taken thirty, sixty or ninety days to make payment. The adoption of this method leads to the absurd result as shown by the accountant's own report that whereas in the fiscal year ending February 1, 1914, the actual net profits of the concern were $338,299.51 there was a so-called loss by barter and trade of the sum of $21,430.96, because the saving gained by discount of $359,730.47 exceeded the net profits by that sum. It is obvious that the net profits in every case are shown by the difference between the actual cost of the merchandise and the selling price after deducting the cost of selling and other proper charges and are not dependent in any way upon what the concern *might have paid* for the merchandise. The report of the appraiser is erroneous in this particular.

The appraiser has deducted from the net profits ascertained by him in the manner above shown six per cent interest on the average gross capital of the copartnership for the six and a half years beginning with the 1st of February, 1909, and terminating the 1st of August, 1914. For the purpose of determining the good will interest on the net capital only should have been deducted.

The transfer tax appraiser has applied a multiple of three years to the sum ascertained by deducting from the net profits as found by him six per cent interest on the capital and $100,000 representing the value of the services of the decedent and the surviving partner, to which latter item no objection is made, and the amount appears to the court reasonable and proper. The sole reason assigned by the accountant and adopted by the transfer tax appraiser for not applying a larger multiple is because the firm was in existence at the death of the decedent only twelve and a half years. I do not think that this is a controlling

Surrogate's Court, New York County, June, 1919.   [Vol. 107.

factor.   The record shows that the sales have increased steadily since the establishment of the copartnership. The sales for the three complete fiscal years preceding decedent's death were respectively $3,986,859, $5,003,364 and $5,919,925.   In the year prior to the death of decedent $219,858.82 was the sum spent for advertising.   The firm is extremely well and favorably known.   It has succeeded in establishing a reputation in the community which might not be gained by other concerns in business many years longer.   Under all the circumstances I think a five years' purchase should be applied in fixing the good will.

The value of decedent's interest in the copartnership should be determined in the following manner.   From the average net profits of $400,990.70 for the three complete fiscal years preceding the death of decedent should be deducted six per cent on the average net capital of $1,053,333 employed for the same period, amounting to $63,019.98, and $100,000 for salaries of the two partners.   The difference, or $237,970.72, multiplied by 5, is $1,189,853.60, the value of the good will.   One-half of this sum, $594,926.80, added to the amount of decedent's capital account of $659,819.45 (book value, less $5,000 deduction from inventory) is $1,254,746.25, the value of decedent's interest in the copartnership at the date of his death.

The charge of $75,000 counsel fee is, in my opinion, excessive.   The estate was not difficult of administration, and no more than $25,000 should be allowed as a deduction.

The report of the appraiser is remitted to him for revision and correction, in accordance with this decision.

Decreed accordingly.